## MAYOR AND COUNCIL OF MACON *v.* SMALL.

No material error appears to have been committed by the court in the admission of evidence or in the charges or failures to charge of which complaint is made in the various grounds of the motion for new trial; the charge of the court was a full, fair, and legal presentation of all the principles of law governing the issues involved; the verdict was sustained by the evidence; sufficient diligence was not shown as to the newly discovered evidence, which was, furthermore, cumulative in its character; and this court will not interfere with the discretion of the trial judge in refusing a new trial.

Argued June 6, — Decided July 22, 1899.

Action for damages. Before Judge Ross. City court of Macon. November 26, 1898.

Small sued the Mayor and Council of the City of Macon for damages which he alleged he had sustained in consequence of the backing of water from a sewer into the cellar of his store on Third street, between Poplar and Cherry streets, in that city. He alleged, that originally the land on which the store was situated was drained by a branch which flowed down Poplar street into the Ocmulgee river, and that, many years ago, the city built a common covered sewer down Poplar street, into which the branch was diverted, and also built, for the purpose of draining the land on Third street, a common sewer down Third street, leading into the Poplar street sewer; that these streets and others were from time to time raised by the city, with the result that water that had originally flowed elsewhere was diverted into the sewer, and with the further result that the natural drainage as it had formerly existed, from the land on Third street into the branch, was prevented; that to facilitate the drainage of this land, and especially of the cellar under the store, the city connected or permitted the owners of the property to connect the cellar with the common sewer on Third street by a sewer which drained the cellar and kept it dry, and which remained in use for more than twenty years; that the common sewer on Third street was of sufficient capacity for the purpose for which it was built, and but for the wrongful act of the city authorities would have so continued; that they permitted or caused the common sewer on Third street and near the intersection with Poplar street to be cut, and to be repaired by inserting in the cut a terra-cotta sewer of less dimension than the original sewer, and by filling with cement or other material the spaces between the terra-cotta pipe and the original sewer, thus causing an obstruction in the sewer, against which trash and other matter passing down the sewer would be apt to lodge and obstruct it further; and that this pipe was allowed to' so remain for one or more months, up to November, 1896, when the trash that had accumulated at that point stopped the sewer and caused the water to back up from it into the lateral sewer which connected the common sewer with the cellar, and to flood the cellar, wet-

ting and damaging the plaintiff's goods; that all of said acts by the city authorities were acts of negligence which rendered the city liable for the damage caused by the flooding of the cellar; that having deprived the land of its natural drainage, it was the duty of the city to provide and keep in repair a proper outlet; that the city adopted as its own the sewer on Third street, and was therefore under the duty to keep it in repair; that, the sewer connecting the plaintiff's cellar with the sewer in Third street having been in use for many years, there was a prescriptive right to a continuance of the connection, and it was the city's duty to maintain it unobstructed; that the damage to the plaintiff's goods from the flooding of the cellar amounted to $1,500; that, to reduce the damage and prevent further damage, he expended in drayage and labor, for the removal of the goods, $100, and for storage $50; and had to break another sewer in order to allow the water to escape from the cellar, which sewer it cost him $10 to repair; and had to work in the water, with his servants, in removing the goods, and in consequence he and one of his servants became ill, and he was compelled to contract medical bills and lose his own services from his work; to his damage $500, and lose the servant's services, of the value of $100; and he sued for a sum covering these amounts.

The answer denied that the city authorities were negligent, or that the water in the cellar came from the source alleged, or that the city was under a duty to keep up the sewer alleged to have drained the cellar. It set up that the drain was a private one; that the cutting and repairing of the sewer was not authorized by the city authorities; that in the exercise of due care they did not ascertain the existence of the defective condition alleged; and that the proximate cause of the damage was an unprecedented rainfall. The trial resulted in a verdict in favor of the plaintiff for $725.64, with interest from November 3, 1896. The city moved for a new trial, which was refused, and it excepted. The motion for a new trial complained that the verdict was contrary to law and the evidence; that the court erred in admitting evidence as to the removal of the goods from the plaintiff's cellar to another place on account of

the condition of the cellar after the water came into it, and in admitting evidence as to the rent charged for the use of the place to which they were taken; the defendant objecting to the testimony on the ground that the plaintiff could not recover rent for that purpose; also in admitting in evidence a list of the damaged goods, over the defendant's objection that it was not an original memorandum, but was copied from a book; that the court erred in failing to charge that if the damages were the result of an unprecedented rainfall which could not have been reasonably anticipated, the plaintiff could not recover; in failing to charge that before the plaintiff could recover he must show by a preponderance of the evidence that the defendant had actual notice of the defective condition of the sewer, or that a sufficient time had elapsed to put the defendant on notice of the defect; in failing to charge that it was not the duty of the defendant to keep the sewer in repair, the evidence showing that it was a private sewer; and in giving in charge certain instructions set out in the motion.    Another ground of the motion was the alleged discovery, since the trial, of evidence showing that the sewer running from the plaintiff's cellar did not connect with the sewer which he alleged had been negligently repaired.

The charge of the court was as follows: " The issue between the parties to this case, as set out in the pleadings, which you are at liberty to read for yourselves, succinctly stated, makes up this case: The plaintiff alleges that there was, to the cellar of the store occupied by him, a sewer built for the purpose of draining the same, and that with that sewer his cellar was a fit place to store goods, and that he had certain goods stored in that cellar; that the city negligently and without proper exercise of its duty cut the drainage sewer and caused it to be fixed in such a way as to render it less fit for the purposes for which it was built, and made it unfit to drain the same, and caused it to be, by these repairs, stopped up by the matters and things that drained through it, and that the stop in the sewer at the intersection of Third and Poplar streets, preventing the water from flowing out of the sewer, caused the water to back into the cellar and run in the cellar, covering in whole or in part

merchandise, and damaging it by contact with the water. The defendant denies that, and says that if there was any sewer at all it was a private drain with which the defendant had nothing to do; that if it cut that private drain it fixed it in a workmanlike manner, and, whether it was fixed in a workmanlike manner or not, the water in the cellar did not get there by reason of the stoppage of the sewer at Third and Poplar, but in some other manner, either flowing there from a source higher than Mr. Small's store, or from the rains on the surface of the earth falling into the area openings, and that in any event it is not liable for any damages, and, if liable at all, not for the sum claimed by the plaintiff. And so you are to decide the issues of fact which will fix the rights of the parties; and in the event you should find that the plaintiff is entitled to recover, you would decide the extent of his damage. In passing upon all issues of fact you will carefully consider the testimony of the witnesses, with a desire to arrive at the truth. In doing that you are not to impute perjury to any witness, if you can avoid it. If there are conflicts, in order to determine the truth of the conflict, whether it arises from corrupt perjury or from honest mistake under oath, you have a right to consider all these matters and things in the record which enable you to decide upon the correctness or incorrectness of the testimony. You may look to the testimony, as well as to the conduct of the witnesses, to see whether they have any interest in this case, pecuniary interest, or any connection with the parties, which gives them a desire as to how the case should terminate, so that you can decide for yourselves whether such interest has caused the witness to have any motive to speak other than the truth, as far as they know it, and whether any such interest caused the witness to be prejudiced consciously or unconsciously to such an extent as to exaggerate or suppress any fact or circumstance of the case. In matters of opinion touching the extent of injury to property, as well as any other matters which rest upon opinion, the jury ought always to consider the interest the witnesses have in the transaction, and their connection with the parties to the case, to see whether or not that interest or connection is likely to cause the witness to have an

exaggerated opinion one way or the other, either consciously or unconsciously, make a larger estimate than is correct under the facts, or a smaller estimate; and after all, questions of fact must be determined by the jury in accordance with the jury's best opinion, from a careful consideration of the evidence in the case.

"The burden is on the plaintiff to make out his case. The jury will, when it has discovered how the evidence preponderates, have discovered the truth of the issue; because in a civil case the jury is instructed to find a verdict in accordance with the preponderance of the testimony, the law adjudging that when you have determined the preponderance of the evidence you have discovered the truth, under the law. Inasmuch as the burden is on the plaintiff, therefore, in order to recover, the preponderance of the testimony must sustain the contention of the plaintiff. If it does not so sustain the plaintiff's case, the verdict would be for the defendant. If it does sustain the plaintiff's case, the verdict would be for the plaintiff. Your first inquiry will be touching those issues of fact upon which the plaintiff's right of action depends, without regard to the question of damages; for if the plaintiff has no right of action, of course he can have no recovery for any damages he may have suffered; it would be what, under the law, is termed 'damage without injury.' The defendant had the right to build up Third and Poplar streets and the public alleys at any time in such way as its judgment dictated to be for the interest of the general public; and therefore the plaintiff can have no right of action because the streets and alleys were changed in their grades. The plaintiff's right of action will depend upon the rights which he and the defendant had touching the sewer which is alleged to have drained his cellar. In order to recover the plaintiff must show you that the water came in his cellar by reason of the negligent act of the defendant, and damaged his goods. So your first inquiry will be directed, perhaps, logically to the inquiry as to how the water came to be in the cellar, if you should determine that there was water in the cellar. The burden is on the plaintiff to show, by a preponderance of the testimony, that the presence of the water in the

cellar was caused by the clogging of the drain sewer at the intersection of Third and Poplar streets, that stoppage causing the water which flowed into the sewer to fill the sewer and back up into his cellar. If the water came into the cellar in any other way than that, your verdict will necessarily be for the defendant. If the water came into the cellar in that way and for that reason, your next inquiry would be, whether the stoppage of the sewer was caused by the negligence of the city in failing to discharge its duty towards the plaintiff with reference to that sewer. On that proposition, which the court has suggested as your next inquiry, you will be governed by your opinion of the evidence, looking to see the construction of the cellar with reference to the streets of the city and the sewer, and whether or not there was an opening from the cellar into the sewer, or, if no such opening, whether or not the cellar and sewer under it were burst by the pressure of the water, so as to let it in in that manner, or whether it came in there through the area openings; it being entirely for the jury's decision as to how the water came to be in the cellar. If you should find that the water came to be in the cellar by reason of the stoppage in the sewer which was to drain the same or other property contiguous to it, then you will see whether the stoppage in the sewer was caused by the negligence of the defendant. If it was not caused by the negligence of the defendant, the plaintiff would not be entitled to recover. If it was caused by a failure of duty on the part of the defendant, which would in law be negligence, the plaintiff would be entitled to recover.

"That brings us to the consideration of the question of the duty of the defendant in reference to the sewer in question. To determine that duty it is necessary for you to determine whether the sewer was a public or a private sewer, and, if it was a private sewer, whether or not it was laid in the streets by permission of the city. Look to the evidence to see if it disclosed who laid the sewer, and when and for what purposes, and how long it has been used. If you should find that the sewer was laid a great number of years ago, under such circumstances as would negative the idea that it was laid without knowledge of the city, the length of time through which it has existed

and the public manner in which it was laid would authorize the jury to conclude that it was by permission of the corporate authorities. The jury would be authorized, if the sewer has been there from the time indicated by the testimony—thirty years or more, to conclude that there was an original permission granted to lay it. If it was used only by the person who originally laid it, for the benefit of his private property and his successors in estate, and by such other private persons as he, the original owner of it, might have permitted to connect with it for the use of their property and their successors in estate, it would be a private sewer. If the defendant at any time began to use the sewer itself for the drainage of the streets or alleys of the city of Macon, any one or more of them, and the city connected or tapped a connection made by another, for the purpose of carrying away the surface-water from a street or alley through this original sewer, the jury would be authorized to conclude that the sewer had been adopted by the city, and if so adopted it would be, to all intents and purposes, so far as the defendant is concerned in regard to its duty towards it, so long as the defendant should use it for the purpose of draining the streets and alleys, a public sewer. And even if the city used it, and thereby made it a public sewer while it used it, it would be a public sewer in a limited sense, because the city at any time, by ceasing to use it, could take away the rights which attached to it as a public sewer; but so long as the city did use it, and by its adoption took charge of it for the purpose of using it, it would necessarily, coincident with that use, become liable for its adoption of the sewer, as it would for any other public sewer. If a private sewer is built and occupied under a license from the corporate authorities, and if it is expensive to build, the license can not be revoked needlessly nor capriciously until a sufficient time has elapsed to allow by its use and enjoyment a recompense for the amount expended in its erection. The city would not be allowed, after permitting a citizen to build a private sewer at an outlay of great expense, to capriciously take away that right until the enjoyment of the sewer had fairly compensated the owner for the outlay. But whether such fair compensation had arisen from the long use

of a sewer or not, the defendant would have the right to abolish any private sewer at any time it saw fit to do so, when its abolition became reasonably necessary for the public good, in the construction of any public sewers and drainage, whether for sanitary purposes or a system of surface drainage. Whenever the necessity for surface or sanitary sewerage renders the construction of a system of sewerage necessary, and in order to meet it the city in its construction has to abolish any private sewer, the city would have the right to abolish any such private sewer and cause the property-owners to connect, if necessary, with the public system. A private sewer, so long as it is not necessary to abolish it, may continue to be used, and the city would have no right capriciously and needlessly to destroy it, if it had been put down by the license of the city and enjoyed for any great time.

"In the case of a private sewer, if, while the license is unrevoked, the defendant makes changes in the sewer which are calculated to cause the sewer to overflow plaintiff's cellar, and such changes do cause such overflow and damage to the owner of the cellar, the defendant would be liable, provided the changes made were made in a negligent, unskilful, unworkmanlike manner, and not otherwise. If it was a private sewer, and if the surface-water from one of its alleys was drained into said sewer through one of the defendant's catch-basins or intake-basins placed there for that purpose, then it was the duty of the defendant to exercise ordinary diligence to keep said sewer in proper repair. If while it was so used by the plaintiff and defendant the same was cut by the city or its agents, then the city was bound to repair it in a proper manner; and if it was repaired in an improper and negligent manner and damage was caused thereby to the plaintiff, then the defendant is liable. You will see first, if the sewer was ever cut by the defendant, under what circumstances it was cut. If it was cut in the construction of a system of sanitary sewers, the defendant would have the right to cut it, if it was necessary to be done; and in the construction of the sewers, in order to preserve this sewer from being cut, the defendant and whoever was constructing the sanitary sewers would only have to exercise ordinary care

to keep from cutting it. And if in the exercise of ordinary care it was proper and right to cut it and fix the sanitary sewers, and afterwards repair the cut sewer, if that were done in an ordinarily prudent, careful way, it would entail no liability. You see if the grade of the sanitary sewer was lower than that of the drain sewer, and find if the sewer could have been supported so as to avoid being cut. If, in the exercise of ordinary diligence, pursuing a work of that kind, the sewer was cut, and afterwards repaired, with due diligence, the fact that it was cut and not kept intact as it originally was would not entail liability. If it was necessary to cut it, and therefore necessary to repair it, it would be the duty of the defendant itself, or to cause whomever it was permitting to work in the streets, to repair it in a workmanlike manner; that is to say, to exercise ordinary diligence to so repair the sewer as to enable it to perform the functions it had been performing. The inquiry necessarily leads, then, to what is ordinary care; and it is defined to be that care and diligence which every prudent man exercises in and about his own affairs of a like kind, for the preservation of his own property. Therefore you look to the testimony to see what knowledge the city had of the purposes for which this sewer was used, and how great a volume of water it had to take off, whether it had any streets drained in it, or such drainage as would likely have a small quantity or large quantity of debris, and see what ordinary diligence would have discovered to the city touching the uses to which the sewer was put. In the light of all that the city knew about it and of all that by the use of ordinary diligence the city would have known about it, the city was bound to see that the damage to the sewer was repaired as a prudent man, for the preservation of his own property, would have repaired it; and anything short of so repairing it, if they failed, would have been negligence. It follows necessarily that if the city exercised that degree of care and repaired it in the same manner that a prudent man would have repaired it, in the way that prudence and diligence would have suggested would keep the sewer amply large enough and free enough to carry off the matter that it was to receive and take away, the city would have

discharged its full duty, and would not be liable, even though it might have erred in its judgment as to the space which it ought to have preserved, or the manner in which it ought to have repaired it. On the other hand, if it did not exercise that care and diligence which a prudent man would have exercised, but negligently or improperly repaired the sewer, and such negligent and improper repair of it caused it to form a place that would catch the contents of the sewer so as to cause it to stop up, and it did stop up and overflow, the defendant would be liable for such negligent conduct and the damage resulting therefrom.

"If you believe from the testimony that the manner in which the sewer was repaired would have caused it to be sufficient for the purposes for which it was intended, and that, if it was stopped at all, the stoppage was caused by the reception in it of debris which could not reasonably be expected to be in a sewer, and that the debris was in the sewer by reason of the fault and negligence of the plaintiff in this case, and but for such debris the sewer would not have become stopped up, and therefore you believe that the plaintiff in the case himself was negligent in permitting things, foreign substances, which could not reasonably be expected to be in a sewer, to be there, then you would be authorized to conclude that the stopping was not caused by the change in the size of the sewer, but from the negligence of the plaintiff in permitting things to be in it which ought not to be in there; and if that was the case you would find for the defendant. If you believe that the water in the cellar of the plaintiff was caused by the plaintiff's stopping up the outlet from his cellar into his sewer himself with any material which prevented the water from flowing out of it, and that such conduct as that was the reason why his cellar was flooded, as a matter of course the plaintiff would not be entitled to recover. If the sewer would have carried off the water from the cellar from the intake, if there was an intake in it—in the cellar of the plaintiff, but for the fact that the plaintiff himself stopped up that intake, as a matter of course the damage in that event would be caused by the plaintiff stopping up the intake, and he can not recover against the city any damages.

"So much if the sewer was a private sewer. If it was a public sewer, in that it had been adopted by the defendant as a receptacle for the surface-water from the street or alley, then, while the defendant would have had the right to cut it in building a system of sanitary sewerage, it would have been bound to exercise ordinary diligence in repairing it, so as to keep it reasonably capable for the purposes for which it had been theretofore used. The difference practically in your consideration of the manner of its repairs, whether a public or a private sewer, would be in the difference of information which the city might have, in your opinion, or ought to have had. You would take into consideration, if it was a public sewer, what knowledge the city had, or in the exercise of ordinary diligence ought to have had, about the volume of water likely to flow into the sewer, and you would hold the city to the exercise of that diligence which a prudent man, under like circumstances, with like knowledge, would have exercised, in repairing a sewer, to preserve its reasonable capacity for the purposes for which it was used. To illustrate: if it should be decided by you to be a private sewer, you might reasonably decide what the city knew about what the volume of the water and the contents of the sewer might be from the cellars. If it received surface-water, it would be a question for you to decide as to what the city ought to have known, by reasonable diligence, about the volume of surface-water that would flow into it, and what would likely go along with the surface-water. In both cases the city was only bound to exercise ordinary diligence, in the light of the facts, to repair the sewer in a workmanlike manner, so as to make it reasonably safe for the purposes for which it was intended, and reasonably as serviceable after the work as before. So that, on that proposition, if you should find that the city did exercise proper diligence in repairing the sewer, then the defendant would not be liable for any stoppage which might have resulted from the repairs being inadequate, even though they were inadequate in fact. If you believe that proper diligence was exercised in making them, there would be no liability upon the city for consequences flowing from the repairs. If they were inadequate, and that inadequacy followed.

from improper diligence in the repairing of the sewer, then there would be liability for such damages as flowed from such repairs. As a matter of course, the plaintiff was bound to exercise ordinary diligence himself to prevent injury to his goods, and also to avoid any injury to them by the negligence of the defendant, if there was any. Hence, if you believe from the testimony that the plaintiff's fault in the improper use of the sewer caused the sewer to become stopped, plaintiff can not recover, even though the defendant was negligent in its repairs. But the fault of the plaintiff must be such as would likely have caused the sewer to become stopped if it had been in its original condition. The plaintiff would have the right to use the sewer in the same manner, and on the idea that it was in the same condition as it had theretofore been.

"If you should find that the city was negligent in its conduct and that that negligence caused the plaintiff to suffer damage, then you would consider the question of the amount of the damages. If entitled to recover at all, the plaintiff would be entitled to recover whatever diminution was caused to the market value of his merchandise by coming in contact with the water. To determine that question you would look to the evidence to see what that damage was. If any articles of merchandise were entirely destroyed, as a matter of course the measure of damages as to those articles would be the market value at the time of destruction. If articles were not destroyed, but only injured, then the measure of damages as to those articles would be the diminished market value of the articles, caused by the contact with the water. You would look to the evidence for enlightenment on this subject. · The plaintiff would not be entitled to recover for any breakage of any barrels or other things containing merchandise, in moving them or in placing them about the cellar. If the water washed down any property so as to cause it to fall and burst, that would .be a damage that is recoverable. The plaintiff can not recover any damages except what the jury believes to be reasonable and consequences of the contact with the water. And hence, if in moving the property from the cellar to any other place, it was thrown down or otherwise broken, that would not be a damage which

could be recoverable by the plaintiff. If the water came in contact with anything in the cellar, anything put up in barrels which could not be injured by the water unless the barrel burst, unless the water caused the barrel to burst, as a matter of course there could be no recovery for any burst barrels or their contents; but if the water coming in contact with anything either burst the vessel in which it was contained or soaked through by leaking into the vessel, injuring and damaging the contents, such as would be injured from the contact of the water would be damages that are recoverable. Any items of expense necessarily incurred in the preservation of the property and the saving of it from further damage by contact with the water are recoverable, but no items of expense except such as were necessary for that purpose are recoverable. The burden is on the plaintiff to show, therefore, not only these items, but that they were necessarily incurred for the preservation of the property, and that therefore the incurring of them inured to the benefit of the defendant by lessening the damages and making them smaller than they would have been but for such expense. And the same principle applies to any allegation as to the breaking of a sewer and repairing of it. Unless such work was necessary for the preservation of the property from further damage, and it inured to the benefit of the defendant by the prevention of greater damage than was sustained, there can be no recovery for any such outlay. If it was necessary, in order to take the goods out of the water or to preserve them from further injury or destruction, to rent a temporary place for the proper handling of the goods to save further damage to them, such necessary expense as that might be recovered. In a word, only those items of damage which are shown to the jury to have been reasonable and necessary consequences of the contact of the water with the goods are recoverable; and such items as were reasonably necessary and proper to preserve the goods from total destruction are included in the damage. The burden is on the plaintiff to show you what damage was sustained, before you are authorized to find for the plaintiff.

"You will make your verdict in accordance with the law which the court has tried to make clear to you, and the opinion

which you entertain of the evidence produced to you. If you should find for the plaintiff, having reached a conclusion as to the amount of damages sustained, you would say, 'We, the jury, find for the plaintiff —— dollars;' and the verdict would be signed by the foreman. If you should find that there is no liability upon the defendant, you would say, 'We, the jury, find for the defendant.'"

*Minter Wimberly*, for plaintiff in error.
*Hardeman, Davis & Turner*, contra.

SIMMONS, C. J. There are numerous grounds of complaint in the motion for new trial. We have carefully read the record of the case, and find that all the assignments of error which relate to matters of law are fully and comprehensively covered by the charge of the learned trial judge. This charge we have ordered reported in full with the report of the case. It is a clear and full presentation of the law which, under the facts in evidence, governed the issues involved. In regard to the admission of evidence complained of in the motion for new trial, there was no error. If the city authorities negligently constructed a sewer so as to damage the plaintiff's property, the latter would be entitled to recover the expenses incurred in preserving and storing his property after some damage had been sustained. Indeed it was his duty to store it and try to preserve it in order to decrease the damages sustained by reason of the defendant's negligence. As to the newly discovered evidence, it appears that after the trial the city authorities claimed to have dug certain ditches and trenches and by this means discovered that the sewer running from Small's cellar did not connect with the sewers which he alleged had been negligently repaired. This was a question at issue upon the trial, and the evidence is therefore cumulative in its nature. Besides, it does not sufficiently appear that the city authorities could not have ascertained these facts before the trial. The declaration put the authorities upon notice as to the manner in which Small claimed to have been damaged, and in the counter-showing made by Small as to this newly discovered evidence, he deposes that before the trial he requested the city authorities to make

this same investigation, and they declined to do so. This counter-showing is not contradicted or disputed, and it would, therefore, appear that by sufficient diligence the facts now claimed to be newly discovered could have been ascertained before the trial.          *Judgment affirmed.     All the Justices concurring.*